JUNE F. WELLS v. MARY SUSAN CARROLL JOHNSON.

(Filed 20 January, 1967.)

**1. Negligence § 26—**

Contributory negligence is an affirmative defense which defendant must plead and prove, G.S. 1-139, and while nonsuit may be entered on the ground of contributory negligence when the facts necessary to show contributory negligence are established so clearly by plaintiff's own evidence that no other conclusion can be reasonably drawn therefrom, nonsuit may not be entered on the issue if it is necessary for the court to rely to any extent upon evidence offered by defendant.

**2. Automobiles § 17; Evidence § 3—**

The courts will take judicial notice that when a duly installed automo-

bile traffic control signal shows red it means stop, and when it shows
green it means go.

**3. Automobiles § 33—**

A pedestrian, even though he starts to cross an intersection with a fa-
vorable traffic light, remains under duty to exercise ordinary care and
caution for his own safety; nevertheless he is entitled to assume, and act
on the assumption, that a motorist approaching the intersection facing the
red traffic signal will obey the law, and is not required to anticipate that
a motorist will not comply with the traffic signal.

**4. Automobiles § 42k—**

The evidence favorable to plaintiff tended to show that plaintiff, a pe-
destrian, started across an intersection with the green light of the traffic
control signal, that when he got some six feet into the street he saw de-
fendant's car approaching some 45 miles per hour a half a block away,
that when he saw the car was not going to stop for the traffic light, he
"froze" and did not move from the time he saw defendant's car until the
time he was hit, *is held* not to disclose contributory negligence as a matter
of law on the part of plaintiff but merely to raise the issue of contribu-
tory negligence for the determination of the jury.

**5. Automobiles § 46—**

Where one view of the evidence tends to show that defendant ran
through a red traffic signal at an intersection, it is proper for the court
to instruct the jury upon the law applicable to such phase of the evi-
dence.

APPEAL by defendant from *Cowper, J.*, March 1966 Civil Session
of NEW HANOVER.

This is a civil action brought by plaintiff, a pedestrian, to re-
cover damages for personal injuries allegedly caused as a result
of the actionable negligence of defendant in striking him with her
automobile driven by her on 8 November 1963 in the intersection
of South College and East Boney Streets in the town of Wallace,
North Carolina.

The pleadings raise issues of negligence and contributory negli-
gence. The jury by its verdict found the defendant guilty of negli-
gence as alleged in the complaint, the plaintiff free from contribu-
tory negligence as alleged in the answer, and awarded plaintiff the
sum of $8,500 in damages.

From a judgment in accord with the verdict, defendant appeals.

*Hogue, Hill & Rowe by Ronald D. Rowe for defendant appel-
lant.*
*Aaron Goldberg for plaintiff appellee.*

PARKER, C.J. Plaintiff's evidence tends to show the following
facts: In the town of Wallace, Boney Street runs generally east and

west, and College street runs generally north and south. The intersection is controlled by a traffic light. Plaintiff is a 25-year-old man, who runs an upholstery shop in the town of Wallace. Defendant is a resident of Wallace, and has been a school teacher for many years. About 5 p.m. on 8 November 1963 plaintiff parked his automobile on the east side of College Street. He got out of his automobile, walked to the intersection of East Boney and South College Streets, and started to cross Boney Street at the intersection. He testified:

> "When I got to the intersection of East Boney and South College Drive, I looked at the light and the light was green and I started to cross the street, and I seen a car coming and I turned around and started back; when I seen she was not going to stop for the red light, I turned around and started back. When I started across the car was about a half block away when I seen it. I watched it for a few seconds and I seen she was not going to stop. I watched it as she came on towards me. I could see it for a half block. I have an opinion satisfactory to myself as to the rate of speed she was going. About 45 miles an hour. As I got six feet into the intersection, I seen her coming and I froze and she hit me and knocked me about — I don't know — from here to that window over there. . . . About 35 or 40 feet."

As a result of being struck by defendant's automobile, plaintiff sustained physical injuries.

Plaintiff testified in substance on cross-examination except when quoted: He saw defendant's automobile about the time he (plaintiff) called Marvin Carter. He was already in the street about six feet when he saw her automobile. He did not proceed any further across the street. He did not turn around and come back. He froze and started to turn around, and she was coming. He was walking about a normal pace. The light was green when he stepped off the curb. Defendant was operating her automobile in an easterly direction on Boney Street within the town limits of Wallace. Plaintiff testified:

> "The light was green for traffic going north on College Street when I crossed the intersection. I did not look back towards the light as I crossed the street. I went about 6 feet. I don't remember whether the light changed from that time or not. It had a caution light. At the time I was hit I was looking towards her. I did say I was looking towards Mr. Carter at one point, when I stepped off the curb. I looked up the street and

seen her coming and I was hit. I was to the east of the stop light. That is correct. I did not see Mrs. Johnson when I stepped off the curb. She was coming towards the east towards me, but I didn't see her until I got six feet into the street.

"I didn't have time to turn around before I was hit. That is the first time I saw her, when she was a half-block up the street. When she was a half-block up the street, I was about six feet from the curb. She was running so fast I couldn't get out of the street. I didn't move from the time I saw her until the time I was hit. I didn't turn around and go back, I tried to turn around. I didn't try to go on across the street. I was already six feet in the street. I started to turn and went to the left. I did not move at all from the time I first saw Mrs. Johnson until the time I was hit. I was looking at her, not the stop light overhead."

Plaintiff testified in substance on redirect examination: When he was injured he was dressed in a white shirt and blue pants. It was broad daylight. There was nothing to prevent a person traveling east on East Boney Street, as it approached South College Street, from having a clear view down the street. As he stood at the intersection of East Boney Street and South College Street and looked westward, he could see a block. There are no obstructions there to prevent anyone from seeing.

Marvin Carter testified in substance, except when quoted: Plaintiff called his name and that is the first time he saw him. At that time plaintiff was coming off the sidewalk or curb into the intersection. He was at a place where pedestrians would walk. About the time plaintiff called him, he saw the car driven by Mrs. Johnson. He testified:

"About that time, this car, Mrs. Johnson, I believe it is, came into my view, which would be to my right from behind the building I was coming up beside of. About that instant, I would say, her brakes were applied. I believe they were, and there was some skidding, and at the same time I was looking at June. June seemed to have frozen. He wanted to do something, but he couldn't do anything, it seemed, and he was struck by the car."

On cross-examination Carter testified in substance: Mrs. Johnson's car traveled about the length of the car before it completely stopped after it struck plaintiff.

Defendant testified in substance, except when quoted: She was driving her automobile east on Boney Street within the town limits

of Wallace to pick up some friends. Her friends lived on Boney Street about 75 feet from the intersection of Boney Street and Callege Street. She testified:

> "Just a block from the intersection, from the west, there was a railroad track, and I was approaching those tracks. I noticed the light turned red. I went very slowly, about 10, as slow as it would go, so that when I got to the intersection, wouldn't have to wait for the red light. About a half block, I guess, before the intersection, the light turned green, and I picked up to 18 or 20 miles an hour, and then started getting ready to stop in the next block.
>
> "As I was in the intersection something darted from the right-hand — right there at me. I began to apply my brakes. I knew that something was hit, hit me, and I stopped immediately, and it was Mr. Wells."

She testified in substance on cross-examination: She could see for one or two blocks eastward. She did not see Mr. Carter or plaintiff on the sidewalk any place before the impact. She knew plaintiff came from the right. She did not blow her horn. She did not see plaintiff after then until he was carried to his home from the hospital. She testified:

> "I did not see him more than once when they carried him home. I did not leave in anger because he told me it was my fault. I did say to him, 'You're trying to make out like I am at fault.' When I told him that he went on the red light and I had the green light, he made that statement that he knew and saw me, but that he thought he had time to make it, but I said, 'Yes, you had the red light and I had the green,' again. He said, 'You were going fast.' "

Floyd Murray at the time of the accident was a policeman in the town of Wallace. He arrived at the scene of the collision here at 5:10 p.m. He investigated the scene. He found impressions from stopping, about five feet, more or less. He saw glass from the headlights of the car about two feet from where the car was stopped. The headlight of defendant's car was broken out, and the rim around the headlight was bent a little.

Defendant assigns as error the denial of her motion for judgment of compulsory nonsuit made at the close of all the evidence.

Defendant states in her brief:

> "The defendant concedes that the plaintiff offered enough evidence to go to the jury on the question of negligence of the

defendant. While the evidence was conflicting, it must be taken in the light most favorable to the plaintiff and would tend to show that the plaintiff stepped into Boney Street when the traffic light facing him was green. The question of whether or not the defendant kept a proper lookout would be for the jury.

"The defendant strenuously contends, however, that the evidence affirmatively shows that plaintiff himself was guilty of contributory negligence, and that the case should have been nonsuited at the close of all the evidence. The defendant's main contention is that even if plaintiff entered Boney Street with a green light, as he claims, that he failed to take proper precautions for his own safety."

Contributory negligence is an affirmative defense which defendant must plead and prove. G.S. 1-139. Nevertheless, the rule is firmly embedded in our adjective law that a defendant may avail himself of his plea of contributory negligence by a motion for a judgment of compulsory nonsuit under G.S. 1-183, when the facts necessary to show contributory negligence are established so clearly by plaintiff's own evidence that no other conclusion can be reasonably drawn therefrom. *Pruett v. Inman*, 252 N.C. 520, 114 S.E. 2d 360, and cases cited. But the court cannot allow a motion for judgment of compulsory nonsuit on the ground of contributory negligence on plaintiff's part in an action for damages for personal injury, as here, if it is necessary for the court to rely on any part of the evidence offered by defendant. *Donlop v. Snyder*, 234 N.C. 627, 68 S.E. 2d 316.

Paragraph 4 of the complaint reads as follows:

"That South College Street in the Town of Wallace, North Carolina, runs north and south and is about 40 feet in width from curb to curb; that East Boney Street, in said town, runs east and west and is about 36 feet from curb to curb; that said intersection is governed by an automatic signal device, duly installed and operated pursuant to an ordinance of said Town of Wallace, which controls the movement of all traffic therein — both vehicular and pedestrian — and which was in operation at the times herein set out."

Defendant's answer in paragraph 4 alleges:

"The allegations of paragraph 4 of the complaint are admitted on information and belief."

Defendant's contention that plaintiff was guilty of legal contributory negligence, as alleged in her answer, barring any recovery

of damages by him necessitates an appraisal of plaintiff's evidence and the judicial admissions in defendant's answer.

Plaintiff's evidence and the judicial admissions in defendant's answer tend to show the following facts: That traffic, pedestrian and vehicular, at and in the intersection of College Street and Boney Street in the town of Wallace is governed by an automatic signal device, duly installed and operated pursuant to an ordinance of the town of Wallace, which controls the movement of all traffic therein and which was in operation at the time plaintiff was struck by defendant's automobile. College Street runs generally north and south, and Boney Street runs generally east and west. Defendant was driving her automobile in an easterly direction on Boney Street towards its intersection with College Street, and when plaintiff started to cross Boney Street the traffic light facing defendant at the intersection was red. We take judicial notice of the fact that when a duly installed automatic traffic control signal shows red it means stop, and when it shows green it means go. As he stood at the intersection of East Boney Street and South College Street and looked westward, he could see a block. There are no obstructions there to prevent anyone from seeing. When he got six feet from the curb into the intersection, he looked and saw defendant's car traveling about 45 miles an hour a half a block away. When he saw her car was not going to stop for the red light, he "froze." He did not move from the time he saw defendant's car until the time he was hit. He saw defendant's automobile about the time he called Marvin Carter.

This is said in 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 420, p. 968: "A pedestrian crossing a street intersection with a favorable traffic signal is still required to exercise ordinary care and caution for his own safety. He is under a duty to keep some lookout for approaching motorists and a change in the signal."

"In the absence of notice or knowledge to the contrary, a pedestrian crossing a street or highway on a favorable signal has a right to assume that operators of approaching vehicles will obey the law and will observe and not disregard the signal, and he is not required to anticipate that a motorist will not comply with the traffic signal." 61 C.J.S., Motor Vehicles, § 470 f (3), p. 59.

This is said in 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 420:

> "The view has been taken under the facts involved in numerous cases that the circumstance that one charged with negligence or contributory negligence in connection with an accident between a motorist and a pedestrian at an intersection entered the intersection with the traffic signal in his favor op-

erates, or at least tends, to prevent a holding that he was guilty of negligence or contributory negligence as a matter of law, despite a showing that he was guilty of acts or omissions which might otherwise have justified that conclusion. . . . In many instances, the circumstance that a motorist or pedestrian approached, entered, or proceeded to cross an intersection with a traffic light in his favor has been seized upon by the courts as operating, or at least tending, to free him, as a matter of law, of the charge of contributory negligence. However, under the particular facts involved, it has been recognized that a motorist or pedestrian was guilty of negligence or contributory negligence under the circumstances shown, or at least, was guilty of conduct from which the trier of the facts could find him negligent or contributorily negligent, despite the fact that he approached or entered an intersection with a favorable traffic signal.

*     *     *

". . . In still other cases it has been held that a finding was justified that no negligence or contributory negligence could be attributed to the motorist or pedestrian because of the insufficiency of the observations made by him as he entered or crossed an intersection with a favorable traffic signal, primarily because of the right of one proceeding with a favorable traffic signal to assume that others will not disregard an unfavorable signal."

See *Kirk v. Los Angeles R. Corp.*, 26 Cal. 2d 833, 161 P. 2d 673, 164 A.L.R. 1, and annotation thereto entitled "Liability for accident at street or highway intersection as affected by reliance upon or disregard of traffic sign, signal, or marking," pp. 8-312.

There is no imperative rule of law requiring a pedestrian *under all circumstances* to look for approaching automobiles before crossing a street or highway. Annot., 79 A.L.R. 1074, where cases from many jurisdictions are cited.

Applying the applicable law, plaintiff's evidence does not show contributory negligence on his part so clearly that no other conclusion can be reasonably drawn therefrom. Whether, under the circumstances shown by the record, plaintiff was guilty or not guilty of contributory negligence was for the jury to determine. The court correctly denied defendant's motion for a judgment of compulsory nonsuit, and submitted the case to the jury.

Defendant assigns as error that the court's instructions to the jury permitted the jury to find that the defendant ran through a red light. Plaintiff's evidence, considered in the light most favorable

to him, would tend to show that defendant ran through a red light. As we understand defendant's brief as quoted above, it in substance concedes this.

. We have carefully examined the other assignments of error to the charge of the court and to its failure to charge, and we are of the opinion that they are without merit and raise no new question or feature requiring discussion. Neither reversible nor prejudicial error has been made to appear. The verdict and judgment below will be upheld.

No error.