WILLIAM JAMES CARTER v. JOHN S. MURRAY AND PRISCILLA ANN BENTON

No. 695SC484

(Filed 4 February 1970)

**1. Trial § 21— motion for nonsuit — consideration of evidence**

Upon motion for nonsuit, all the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and resolving all contradictions, conflicts, and inconsistencies in plaintiff's favor.

**2. Trial § 21— motion for nonsuit — consideration of evidence**

Upon motion for nonsuit, defendant's evidence which contradicts that of plaintiff or tends to show a different state of facts is disregarded, and only that part of it which is favorable to plaintiff can be considered.

**3. Automobiles § 62— striking pedestrian in unmarked crosswalk — sufficiency of evidence**

In this action for personal injuries sustained by plaintiff pedestrian when he was struck by defendants' automobile while crossing the street, the trial court erred in granting defendants' motion for nonsuit made at the close of all the evidence, where the evidence would permit inferences that plaintiff was struck while crossing the street within an unmarked crosswalk at an uncontrolled intersection, and that defendant-driver had failed to yield the right-of-way to him as required by G.S. 20-173(a) and had failed to keep a proper lookout.

171

**4. Negligence § 35— nonsuit for contributory negligence**

Nonsuit on the ground of contributory negligence is proper only if plaintiff's evidence, considered in the light most favorable to him, so clearly establishes his own negligence as one of the proximate causes of his injuries that no other reasonable inference may be drawn therefrom, and nonsuit may not be entered on that ground if it is necessary for the court to rely on any part of the evidence offered by defendant.

**5. Automobiles § 83— pedestrian in unmarked crosswalk — contributory negligence**

In this action for personal injuries sustained by plaintiff pedestrian when he was struck by defendants' automobile while crossing the street, plaintiff's evidence does not establish contributory negligence as a matter of law where it tends to show that he stopped at the corner of an uncontrolled intersection, looked both ways before starting across the street, and then walked straight across the street in an unmarked crosswalk at the intersection, and that he had almost completed the crossing and reached the curb on the other side before he was struck.

**6. Automobiles § 40— pedestrian in unmarked crosswalk — assumption that motorist will yield right-of-way**

In the absence of anything which should give notice to the contrary, a pedestrian in an unmarked crosswalk is entitled to assume and to act upon the assumption, even to the last moment, that others will observe and obey the statute which requires them to yield the right-of-way.

APPEAL by plaintiff from *Bone, J.,* April 1969 Civil Session of NEW HANOVER Superior Court.

This is a civil action to recover damages for personal injuries suffered by plaintiff, a pedestrian, when he was struck about 7:27 p.m. on 5 January 1968, while crossing Fourth Street in Wilmington, N. C., by an automobile operated by the feme defendant and owned by the male defendant as a family-purpose automobile. Plaintiff alleged that he was struck "at or in the intersection" of Fourth and Taylor Streets and that his injuries were proximately caused by the driver's negligence in (a) failing to keep a proper lookout and to keep her car under control, (b) failing to pay heed to her surroundings and to diminish speed, (c) driving at a speed and in a manner so as to endanger persons and property, (d) failing to blow her horn or to give other warning to alert the plaintiff, and (e) failing to yield the right-of-way in violation of G.S. 20-173. Defendants answered, admitting the family-purpose status of the automobile, but denying the accident occurred in the intersection and alleging that it occurred "at a point 60 or 75 feet North of the intersection" where there was no crosswalk for pedestrians and where the driver-defendant had no reason to anticipate that a pedestrian would attempt to cross. Defendants denied negligence on

their part and pleaded contributory negligence on the part of the plaintiff.

At the scene of the accident, Fourth Street is approximately 39-feet wide from curb to curb and runs generally north and south through a residential area. On the east of Fourth Street, Taylor Street runs generally east and west and intersects Fourth Street from the east at a right angle. On the west of Fourth Street, the intersecting street turns and runs in a southwestern direction, intersecting Fourth Street from the southwest at an oblique angle. At some point southwest of its intersection with Fourth Street, the intersecting street becomes North Front Street. At the northwest corner of the intersection there is an A & P Store, separated from the streets by a parking area. The intersection at Fourth and Taylor Streets is an uncontrolled intersection.

Plaintiff's wife testified:

"My husband and I had been to the A & P prior to this collision . . .

"I would say it was around 7:30 or something like that. The intersection at the corner of Taylor and 4th has lighting. There's two lights on the corner, there's one right on the corner of 4th and Taylor and one across the street, and the A & P has got a light sign there . . . As to what sort of light it creates there, it's not dark there. When we came out of the A & P we walked to the corner of 4th and Taylor. Me and him come out of the A & P and we walked to the corner of 4th and Taylor and he had a big bag of groceries and I had one. Me and him looked good before we started across the street. We didn't see anything coming. He was ahead of me and I was behind him. I was on the white line in the street. He was nearer to the curb, he was just about to the curb and I was on the white line. As to how far he had gotten across the street, he was nearly ready to step up on the curb; on the other side.

"Well, when he got across the street I was in the intersection at the white line behind him and he was across the street just about to get to the curb and I looked up the street and I seen a car coming fast. This car was just about at 4th and Nixon when I first saw it. I would say that was near about a block from where I was. And this car was coming, and coming at a good speed. I said 'Look out James.' And when I said 'Look out' like that he tried to make it to the curb and I ran back across the street. By that time the car had hit him in the side and had

him across . . . her car across there and — I mean about the hood. She couldn't stop right then she carried him halfway the block and then when she stopped that shook him off and when she shook him off she started backing up. She started backing her car back to the corner. . . .

". . . My husband was laying in the street about half a block up from the corner. He didn't move from where he fell off the hood. . . . This automobile which struck my husband did not sound a horn. I didn't hear no horn. . . .

\*   \*   \*   \*   \*

". . . They have markings laid out on the corner where we crossed the street, where people walk in; they have a sign post there that says 4th and Taylor. No, I don't think they have two lines in which you walk across. We walked right by where the post, on the other side of the sign post there, 4th and Taylor, we walked on the other side of that. That would put us right on the sidewalk. Everybody uses that walkway."

On cross-examination, plaintiff's wife testified:

"This was in January when my husband and I came out of the A & P store about 7:30 or 7:45 and it gets dark about 6:00 o'clock that time of year . . . We came right out of the A & P store and came right up the walkway where everybody else walks right to Taylor Street; right to the corner. The front of the A & P does not face squarely on 4th Street; it's kind of sidewise. . . .

"(W)e live on Taylor Street, and we came to the corner of 4th and Taylor, that's where we came to cross, that's where everybody crosses that lives on Taylor Street . . .

". . . There is no market crosswalk across 4th Street; there's no white line going across this way, but there's one up and down the middle of the street. The center line of 4th Street. . . .

". . . My husband had on a dark blue overcoat. He had on a brown hat. And had a big sugar bag in his hands. . . . Paper sugar bag full of groceries. He was carrying it on the right side, that's the side she struck him on. . . . As me and my husband started across there were no vehicles in sight at all on 4th Street then. I didn't see no cars. We didn't go out in front of no automobile. . . . He was actually in the act of stepping up on the curb on the other side when I looked down the street and saw this car coming; and I said 'Look out', and

when I said 'Look out' like that he turned like this to try to make the curb and the car had done struck him in the side and he fell across the car and she couldn't stop right then. She carried him halfway the block. . . .

\*     \*     \*     \*     \*

". . . There is no electric traffic signal at this intersection that has red and green lights."

Plaintiff, James Carter, testified:

"Just before I was hurt my wife and I had been down to the A & P. That A & P store sets down the hill from Taylor Street. . . . We were coming home from the A & P and we come up to the street and traffic was pretty heavy. From the store we went to the corner. I am sure that we went to the corner. I didn't do anything then. We went to the corner, I and her, I had groceries in my hands. We were going home. Going home and we come to Taylor Street. We were living on Taylor Street. My home is east from the corner. Coming from the A & P going up Taylor Street that would be east. I was just about across the street. I didn't see any cars before I left the corner of 4th and Taylor Streets. I look thisaway and I looked thataway, each way, and I didn't see any cars. Then I started on across. I was ahead of my wife; she was behind me. I was just about across the street. Because I had this here foot here ready to put up on the sidewalk; the curb. And I went to pick this one up and that's all I can remember. I didn't hear no horn blow; and didn't see no lights. . . ."

On cross-examination, plaintiff testified:

"I said before I started across 4th Street I looked. I looked north and south, both ways. I was holding the big sack of groceries in my right arm, going across the street. I was walking fast to get out of the way of anything that was coming but I didn't see nothing coming. I looked before I started across.

\*     \*     \*     \*     \*

". . . I did not see it before it struck me. If I had seen it I never would have walked in front of no car. Whatever hit me, I didn't see it before it did hit me. . . ."

Plaintiff completed his evidence by offering medical testimony as to his injuries. At the close of plaintiff's evidence, defendants' motion for nonsuit was overruled. Defendants then offered the testimony of the defendant-driver, of a passenger in her car, and of the investigating officer. Their testimony tended to show that Fourth

Street is a two-lane street and that defendants' car was proceeding north on Fourth Street in the right-hand lane in second gear and at a speed of approximately 25 miles per hour; that it passed through the intersection with Taylor Street and was about 45 feet north of the intersection before it hit the plaintiff; that plaintiff was about fifteen feet in front of the car when the passenger first saw him and called out a warning to the driver; that the driver had not seen plaintiff until her passenger called out; that at that time plaintiff had just stepped across the center line of Fourth Street; that defendant-driver turned to the left and stopped her car, but the right bumper or fender hit plaintiff; that the car did not move after it struck the plaintiff; and that after he was hit, plaintiff was lying in front of the car about four feet from the center line of the highway and approximately 45 feet north from the intersection of Taylor Street.

At the close of all the evidence, defendants renewed their motion for nonsuit, which was allowed. Plaintiff appealed.

*Aaron Goldberg and Herbert P. Scott, for plaintiff appellant.*

*James, James & Crossley, by John F. Crossley, for defendant appellees.*

PARKER, J.

[1, 2]  Appellant's sole assignment of error is that the trial court erred in granting defendants' motion for nonsuit made at the close of all of the evidence. In passing upon motion for nonsuit, all the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and resolving all contradictions, conflicts, and inconsistencies therein in plaintiff's favor. Defendants' evidence which contradicts that of the plaintiff, or tends to show a different state of facts, is disregarded, and only that part of it which is favorable to plaintiff can be considered. *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47.

The evidence in the present case, when subjected to these rules, would permit the jury to find the following facts: Plaintiff lived on Taylor Street east of Fourth Street. He went with his wife to the A & P store, which is on the west side of Fourth Street. On leaving the store, they walked to the corner of Fourth and Taylor Streets, where they stood beside the sign post, "right on the sidewalk." There they stopped and looked both ways on Fourth Street, but saw no car approaching. There was no traffic control signal and no

marked crosswalk at the intersection. After looking both ways and seeing no car, plaintiff started walking eastward directly across Fourth Street "where everybody crosses that lives on Taylor Street." It was dark, but the intersection was lighted by street lights and by the store sign. When plaintiff was almost all of the way across Fourth Street and was about to step onto the curb on the east side, he was struck by defendants' car, which was proceeding north on Fourth Street "at a good speed." Plaintiff was carried on the hood of the car approximately 45 feet north of the intersection before it came to a stop and threw plaintiff to the pavement. Defendant-driver did not sound her horn and plaintiff did not see the car before it struck him. Defendant-driver did not see plaintiff until after her passenger had first seen him and had called out a warning to her.

[3]    From these facts, a reasonable inference could legitimately be drawn that plaintiff was struck by defendants' car while he was crossing Fourth Street within an unmarked crosswalk at an intersection and that defendant-driver had failed to yield the right-of-way to him as required by G.S. 20-173(a). It would further be a permissible inference that defendant-driver had failed to keep a proper lookout, as she did not see plaintiff until after her passenger had first seen him and called out a warning to her. These permissible findings and inferences would support a jury verdict of actionable negligence on the part of the defendants and nonsuit was not justified on the ground of insufficiency of the evidence on that issue.

[4-6]    Nor was nonsuit proper on the issue of plaintiff's contributory negligence. Nonsuit on the ground of plaintiff's contributory negligence is proper only if plaintiff's evidence considered in the light most favorable to him, so clearly establishes his own negligence as one of the proximate causes of his injuries that no other reasonable inference may be drawn therefrom. *Bowen v. Gardner, supra.* Nonsuit may not be entered on the ground of contributory negligence on plaintiff's part if it is necessary for the court to rely on any part of the evidence offered by the defendants. *Wells v. Johnson,* 269 N.C. 192, 152 S.E. 2d 229. Plaintiff's evidence in the present case, when considered in the light most favorable to him, and ignoring defendants' evidence to the contrary, tends to show that plaintiff stopped at the corner of the intersection, looked both ways before starting to cross the street, and then walked straight across the street in an unmarked crosswalk at the intersection and thus had the right-of-way under G.S. 20-173(a). The evidence further tends to show that he had almost completed the crossing and reached the curb on

the other side before he was struck. If these were the facts, then plaintiff was not required to anticipate negligence on the part of others. "In the absence of anything which gave or should have given notice to the contrary, [plaintiff] was entitled to assume and to act upon the assumption, even to the last moment, that others would observe and obey the statute which required them to yield the right-of-way." *Bowen v. Gardner, supra.* Even if plaintiff had seen defendants' car approaching, the evidence here shows nothing unusual in the car's approach which would have put plaintiff on notice that the driver did not intend to obey the law and yield the right-of-way to him. True, it was plaintiff's duty, even with the right-of-way, to exercise ordinary care for his own safety. However, on that matter there is evidence to support a finding either way. While the evidence as to whether he continued to maintain a proper lookout throughout the entire time he was crossing is unclear, the evidence in that regard certainly does not so clearly establish negligence on his part that no other reasonable inference can be drawn therefrom.

Defendants' evidence was in sharp conflict with that of the plaintiff, and would indicate that plaintiff was not crossing at an intersection but was at least 45 feet north of the intersection and that, at night in an unlighted area and wearing dark clothing, he stepped directly into the path of defendants' car, which had the right-of-way and was proceeding within its own proper lane of traffic while being driven at a lawful speed and in a careful and prudent manner. However, determination of the true facts from the sharply conflicting evidence was for the jury.

The judgment of involuntary nonsuit is

Reversed.

CAMPBELL and GRAHAM, JJ., concur.