ALMA GOODMAN and VERNON GOODMAN, Plaintiffs, *v.* WALTER E. BROWN, Defendant.

City Court of Rochester, Civil Branch, September 1, 1937.

*Albert J. Rubin,* for the plaintiff.

*Charles B. Bechtold,* for the defendant.

TOMPKINS, J. The plaintiff Alma Goodman, on January 28, 1937, at about eleven-thirty P. M., while on her way home from a movie theatre, started to cross Main Street East of Rochester, from the southeast corner of its junction with Elm street to the north side thereof. Having proceeded about two-thirds of the way, to some point between the northerly street car tracks and the north curb, she collided with defendant's automobile, resulting in injuries to herself, for which she seeks to recover in this action. The intersection of Main Street East with Franklin street on its north side is protected by signal lights. Plaintiff was practically opposite the lights on the westerly side of the Franklin street intersection as she started to cross. The light was green when she started. She had proceeded until she was on the northerly, or west-bound, car tracks when the signal light changed. She looked right and saw an automobile on the easterly side of Franklin street intersection

start at what appeared a slow speed. She continued on her way, and the next she realized this car was upon her, the collision occurred, and she was thrown to the pavement.

The defendant testified he had stopped and bought a newspaper from a proprietor of a news-stand located at the northwest corner of Franklin and Main Street East; that the light changed to green, and that he proceeded slowly to cross the intersection; that he did not see the plaintiff, and his first knowledge that she was crossing Main street was the impact between her body and his automobile. The defendant admitted the sight of his left eye was defective. How much vision remained did not appear.

Main Street East at the point of collision is fifty-eight feet from curb to curb. From the south curb to the northerly rail of the street car tracks is thirty-eight feet. Consequently, plaintiff had proceeded over thirty-eight feet before she was hit by defendant's automobile.

By chapter 756 of the Laws of 1930 there was added to section 85 of the Vehicle and Traffic Law five subdivisions defining the rights and duties of pedestrians in respect to the use of the highways of the State, outside of the city of New York. Subdivision 5 provides: " At intersections where traffic is controlled by traffic control signals * * * operators of vehicles * * * shall yield the right of way to pedestrians crossing or those who have started to cross the roadway on a green or ' go ' signal."

It is this provision which defines the rights and duties of both the plaintiff and the defendant in this case. The signal light was green when the plaintiff started to cross. She had a legal right not only to start across the street, but to continue to cross, even though after she started the light changed to red. When the lights changed to green for east- and west-bound traffic on Main street the defendant had a right to proceed. However, so long as there were pedestrians who had started to cross Main street on the green signal for them, but had not completed the crossing, it was the duty of the defendant to give such pedestrians the right of way, and to so operate his car as to permit them to complete the crossing without interference on his part. This the defendant did not do. He testified that he did not see the plaintiff. The intersection is lighted with two street lamps on each side of Main street, as appears from Exhibit 1. Had he looked he should have seen, and then have yielded the right of way. He is bound by what he should have seen (*Weigand* v. *United Traction Co.*, 221 N. Y. 39, 42), and this, even though his failure to see may have been due to defective vision. His failure to see plaintiff, and, seeing, to yield her the right of way, caused the collision, and was negligence.

It is a matter of common observation that pedestrians lawfully proceeding to cross our streets in obedience to signal lights are frequently trapped before reaching the opposite curb, and that too often inconsiderate and impatient operators of motor vehicles are reluctant to yield to the pedestrian's right to proceed. This protecting provision of the law is both timely and salutary. Its mandate should be obeyed. Its provisions should be enforced.

The defendant insists that, because the plaintiff, having proceeded over half-way across Main street and seeing the defendant starting to cross Franklin street, then continued to cross instead of stopping, she, as a matter of law, was guilty of contributory negligence. Several cases are cited in support of this proposition. The cases cited were all decided prior to the enactment of this provision in 1930, and none of them was a case in which signal crossing lights were involved. They are not controlling. The plaintiff continuing to cross, exercised the right given her by the statute. She had the right to assume that the defendant would obey the mandate of the law and yield her the right of way. In exercising this right she was not guilty of contributory negligence as a matter of law.

In continuing to proceed, did plaintiff act as the ordinarily prudent person would under the same circumstances? She was already on the northerly car tracks at the time that the light changed and she observed the defendant starting to cross Franklin street. She testified he appeared to start slowly. Defendant himself testified he started in low, not over six miles an hour. Knowing that she had a legal right to proceed, and that the defendant was legally bound to yield to that right, and observing that he was moving slowly at the time, I do not feel that she was either imprudent or negligent in continuing to do what the law said she might do. Where a pedestrian in crossing a highway, even when unprotected by lights, has looked and observed an approaching vehicle, even though he has miscalculated the danger, he may still be free from fault. (*Knapp* v. *Barrett*, 216 N. Y. 226, 230.)

It is unnecessary to determine here as to just what extent the pedestrian lawfully crossing an intersection protected by lights must look before and while so crossing for approaching vehicles, inasmuch as the plaintiff here did look and did observe the defendant's car. It may be there is still an obligation to look, and so, if possible, protect the pedestrian from willful or thoughtless violators of the law. Yet the pedestrian must of necessity, while crossing the street, give heed to some extent to the condition of the pavement itself, especially when traversed by street car tracks, and, also, he should pay some attention as to whether the lights continue on the " go " signal. .

In defining the duty of the pedestrian when crossing at a light-controlled intersection to look for vehicles whose unlawful operation may imperil him, it must not be overlooked that subdivision 2 of section 85, providing where a pedestrian is crossing a roadway at an intersection unprotected by signal lights, that, while operators of vehicles must yield him the right of way, nevertheless the pedestrian is not relieved "from the duty of exercising due care for his safety." It is significant that this provision of due care is omitted from subdivision 5.

The plaintiff Alma Goodman is entitled to recover from the defendant as damages for the injuries she suffered the sum of $500; her husband, the plaintiff Vernon Goodman, is likewise entitled to recover from the defendant the reasonable value of her doctor and hospital bills, occasioned by his wife's injuries and incurred by him, and also for the loss of her services and society, in the sum of $275. One bill of costs is allowed to the wife.