LAKE, J., took no part in the consideration or decision of this case.
This is a civil action to recover damages for personal injuries. Plaintiff alleges she was struck by a motorcycle owned by James Gardner and operated by his son, Danny (Donny) Clifton Gardner, as the agent of his father within the meaning of the family purpose doctrine. Plaintiff charges Danny with (1) failure to keep a proper lookout; (2) excessive speed; (3) failure to yield the right of way; (4) failure to take necessary action to avoid colliding with plaintiff; (5) driving recklessly and failing to use due caution and circumspection; and (6) operating the motorcycle in the nighttime without proper headlight.
Defendants deny all allegations of negligence, deny family purpose ownership, and plead contributory negligence on part of plaintiff in that she failed to keep a proper lookout and failed to yield the right of way to defendant Danny Clifton Gardner in violation of G.S. 20-174 (a).
Motion for judgment of nonsuit at the close of plaintiff's evidence was allowed. On appeal to the Court of Appeals the nonsuit was affirmed. We allowed certiorari.
Did the Court of Appeals err in sustaining the judgment of nonsuit? The answer lies in application of established rules governing motions for nonsuit. These rules may be enumerated as follows:
[1] 1. All the evidence which tends to support plaintiff's claim must be taken as true and considered in its light most favorable to plaintiff, giving her the benefit of every reasonable inference which *Page 366 
legitimately may be drawn therefrom. Homes, Inc. v. Bryson,273 N.C. 84, 159 S.E.2d 329.
2. Contradictions, conflicts and inconsistencies are resolved in plaintiff's favor. Watt v. Crews, 261 N.C. 143, 134 S.E.2d 199; Nixon v. Nixon, 260 N.C. 251, 132 S.E.2d 590; Smith v. Corsat,260 N.C. 92, 131 S.E.2d 894.
[2] 3. Defendants' evidence which contradicts that of the plaintiff, or tends to show a different state of facts is disregarded. Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307; R. R. v. Woltz, 264 N.C. 58,140 S.E.2d 738; Eason v. Grimsley, 255 N.C. 494,121 S.E.2d 885. Only that part of it which is favorable to plaintiff can be considered. Rosser v. Smith, 260 N.C. 647, 133 S.E.2d 499; Wall v. Bain,222 N.C. 375, 23 S.E.2d 330.
4. Acts of contributory negligence not alleged in the answer should be ignored. Maynor v. Pressley, 256 N.C. 483,124 S.E.2d 162; Rodgers v. Thompson, 256 N.C. 265, 123 S.E.2d 785; Skinner v. Jernigan, 250 N.C. 657, 110 S.E.2d 301.
[3] 5. When opposing inferences are permissible from plaintiff's evidence, nonsuit on the basis of contributory negligence as a matter of law should be denied. Atwood v. Holland, 267 N.C. 722,148 S.E.2d 851. See 6 N.C. Index 2d, Negligence, Sec. 35.
[6] Plaintiff's evidence in its light most favorable to her, when subjected to these rules, would permit a jury to find the following facts:
In the City of Wilson, Downing Street runs north and south while Jordan Street runs east and west. Downing Street is thirty-two feet wide with a paved sidewalk on each side. Jordan Street is approximately the same width but has no paved sidewalks. These two streets intersect at right angles. The intersection is well lighted by a large overhead street lamp but has no traffic control signal. A view of the intersection looking north and south along Downing Street is unobstructed for 300 to 400 feet. Plaintiff, a 72-year-old woman, lived with Mrs. Etta Tyson whose home was located in the southeast corner of said intersection. On 15 November 1966 about 7:50 p.m. immediately before plaintiff's injury, several ladies had met at Mrs. Tyson's house to go from there to a Sunday school class meeting. Plaintiff intended to go with them. One of the class members drove her car by Mrs. Tyson's house to pick them up. The car stopped close to the curb beside the Tyson house and on the left side of Jordan Street facing Downing Street. When the car was loaded, there was no room for plaintiff, and she decided to go across Downing *Page 367 
Street and stay with her friend Mrs. Morey, whose house was on the southwest corner of the intersection, until Mrs. Tyson returned. At that time she was standing in a grassy area (where a sidewalk would have been had there been one) on the south side of Jordan Street. When she left her friends in the car, she was on "what you would call the sidewalk going to the corner." Before stepping off the curb at the corner, she looked both ways to see if the way was clear. She didn't see anything and started walking straight across Downing Street. Meanwhile, defendant Danny Clifton Gardner had stopped at a filling station a block away. He left there on his motorcycle riding south on Downing Street and had accelerated his speed to 30 miles per hour. There was no other traffic and the street was straight, level and dry. The weather was clear and cold. His headlight was on low beam and would render clearly visible a person ahead of him for a distance of about 100 feet. He failed to see plaintiff until he was within 20 feet of her. At that time she was in the center of Downing Street walking rapidly toward its western curb and sidewalk. He cut his motorcycle to his right and struck plaintiff when she was 6 or 8 feet from the western curb. She suffered a cerebral concussion, a broken leg and other permanent injuries. She was delirious and disoriented for several weeks and continues to incur large medical bills.
Evidence unfavorable to plaintiff tended to show she was running across Downing Street at an angle and that the collision occurred at a point 60 feet south of the intersection and 7 or 8 feet from the west curb. This evidence is contained in the adverse examination of Danny Gardner which was offered by plaintiff. On motion to nonsuit, however, this testimony is ignored.
[4, 5] The Court of Appeals held the evidence sufficient to support a finding of actionable negligence on the part of Danny Gardner, and we concur. Even in the absence of statutory requirements, "[I]t is a general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. This duty also requires that the operator must be reasonably vigilant, and that he must anticipate and expect the presence of others." Adams v. Service Co., 237 N.C. 136, 141,74 S.E.2d 332, 336. It is the duty of a driver not merely to look but to keep a lookout in the direction of travel; "and he is held to the duty of seeing what he ought to have seen." Wall v. Bain, 222 N.C. 375
379, 23 S.E.2d 330, 333. Such duty requires increased vigilance when *Page 368 
the danger is increased by darkness or other conditions obscuring his view. Chesson v. Teer Co., 236 N.C. 203, 72 S.E.2d 407; Bradham v. Trucking Co., 243 N.C. 708, 91 S.E.2d 891.
[6] Manifestly, defendant Danny Gardner's alleged failure to keep a proper lookout is supported by evidence sufficient to go to the jury on the negligence issue. We put aside further discussion of the evidence bearing on his negligence.
[7-9] The Court of Appeals sustained a judgment of nonsuit on the premise that plaintiff was contributorily negligent as a matter of law. Nonsuit on that ground is proper only if plaintiff's evidence, considered in the light most favorable to her, so clearly establishes her own negligence as one of the proximate causes of her injury that no other reasonable inference may be drawn therefrom. Anderson v. Carter, 272 N.C. 426, 158 S.E.2d 607; Black v. Wilkinson, 269 N.C. 689,153 S.E.2d 333; Raper v. Byrum, 265 N.C. 269, 144 S.E.2d 38; Pruett v. Inman, 252 N.C. 520, 114 S.E.2d 360. Let us look at the evidence. In the light most favorable to plaintiff it tends to show that she looked both ways before leaving the curb; that she kept looking as she was crossing; that she started straight across the street from the corner; that the motorcycle was moving at 30 miles per hour or 44 feet per second; that she was struck after walking 24 to 26 feet and before she ever saw it. The evidence fails to show where the motorcycle was when she left the curb. It would have traveled over 300 feet in 7 seconds. How long it took her to walk 26 feet is unknown. Does this evidence so clearly establish negligence on her part that no other reasonable inference or conclusion can be drawn therefrom? We think not. It is sufficient to support a jury finding that plaintiff was crossing Downing Street in an unmarked crosswalk at an intersection and thus had the right of way under G.S.20-173(a). The Court of Appeals so held. Its unfavorable aspects would permit the jury to find that she was crossing Downing Street 60 feet south of the intersection at a point where there was no marked crosswalk and thus was required to yield the right of way to all vehicles upon the street under G.S. 20-174 (a). These are opposing inferences permissible from plaintiff's evidence, and only the jury may make the choice. Nonsuit as a matter of law should therefore be denied. Byers v. Products Co., 268 N.C. 518, 151 S.E.2d 38; Stewart v. Gallimore, 265 N.C. 696, 144 S.E.2d 862; Montford v. Gilbhaar,265 N.C. 389, 144 S.E.2d 31; Murray v. Bottling Co., 265 N.C. 334,144 S.E.2d 1. Hence, it was error to conclude that she was contributorily negligent as a matter of law for failure to see the motorcycle and to use ordinary care for her own safety. If she was crossing in *Page 369 
an unmarked crosswalk at an intersection, she was not required to anticipate negligence on the part of others. In the absence of anything which gave or should have given notice to the contrary, she was entitled to assume and to act upon the assumption, even to the last moment, that others would observe and obey the statute which required them to yield the right of way. Reeves v. Staley, 220 N.C. 573,18 S.E.2d 239; Carr v. Lee, 249 N.C. 712, 107 S.E.2d 544; Gamble v. Sears, 252 N.C. 706, 114 S.E.2d 677. Had plaintiff seen the motorcycle approaching, this rule of law would still apply. Whether its speed, proximity, or manner of operation were such that plaintiff, simply by failing to see it, failed to exercise due care for her own safety is a jury question on this record. The evidence shows nothing unusual in the motorcycle's approach which would have put plaintiff on notice that the cyclist did not intend to obey the law and yield the right of way. Thus the circumstances permit opposing inferences, and this carries the case to the jury.
Cases followed by the Court of Appeals — Warren v. Lewis,273 N.C. 457, 160 S.E.2d 305; Price v. Miller, 271 N.C. 690,157 S.E.2d 347; Blake v. Mallard, 262 N.C. 62, 136 S.E.2d 214; Rosser v. Smith, 260 N.C. 647, 133 S.E.2d 499; and Garmon v. Thomas, 241 N.C. 412,85 S.E.2d 589 — are all factually distinguishable. The principles of law enunciated in them are perfectly sound and are applied in each case to a litigant who did not have the right of way. True, right of way is not absolute. It was plaintiff's duty here, even with the right of way, to exercise ordinary care for her own safety. Carr v. Lee, supra. On that aspect of her conduct, however, there is evidence to support a finding either way. It becomes a question of fact for the jury rather than a matter of law for the court. Both sides allege right of way in themselves and each charges the other with failure to yield. This is the crux of the case. The rights and liabilities of the parties largely hinge upon the jury's answer to that proposition.
[10] Plaintiff alleges that the motorcycle which struck her was owned and maintained by James Gardner as a family purpose vehicle for the use and pleasure of members of his family and particularly his 18-year-old son Danny Gardner who was a member of his father's household; and further, that Danny was operating the motorcycle as his father's agent and with his father's permission and consent. These allegations are denied in the answer of both defendants. In the adverse examination of Danny Gardner, offered in evidence by plaintiff, Danny testified: "I own it but the motor vehicle registration certificate is in my father's name. He applied for the registration so it could be issued in his name. I use the motorcycle for my own use and pleasure. No one else uses it." Proof of registration *Page 370 
in the name of James Gardner is prima facie evidence of ownership by him and agency in the driver under G.S. 20-71.1 (b). Such prima facie evidence of ownership in the father is sufficient to carry the case to the jury against him. Travis v. Duckworth, 237 N.C. 471,75 S.E.2d 309; Jyachosky v. Wensil, 240 N.C. 217, 81 S.E.2d 644. And this is true even though plaintiff's proof goes further and shows by the testimony of Danny Gardner that he, not his father, owned the motorcycle, maintained it for his own use, and was on a mission of his own at the time of the collision out of which plaintiff's injuries arose. This evidence is sufficient, if true, to rebut the prima facie evidence that James Gardner owned the motorcycle and Danny Gardner was driving it as the owner's agent. Even so, proof of registration in James Gardner's name is evidence to the contrary. Since discrepancies, conflicts and contradictions in plaintiff's evidence do not justify nonsuit, the decision of the Court of Appeals sustaining the nonsuit as to James Gardner is erroneous. Perkins v. Cook,272 N.C. 477, 158 S.E.2d 584.
The decision of the Court of Appeals is reversed as to both defendants. The case is remanded to that Court where it will be certified to the trial court for a new trial in accord with this opinion.
Reversed and remanded.
LAKE, J., took no part in the consideration or decision of this case.