ELSIE MAE WAGONER v. CAROLYN LEWEY BUTCHER AND ROBERT ALEXANDER BUTCHER

No. 6915SC450

(Filed 22 October 1969)

**1. Automobiles § 40— pedestrians — right-of-way — assumptions**

To a pedestrian the right-of-way means that he has the right to continue in his direction of travel without anticipating negligence on the part of motorists, and unless the circumstances are sufficient to give him notice to the contrary, he may act upon the assupmtion, even to the last moment, that motorists will recognize such a preferential right.

**2. Automobiles § 40— pedestrians — duty to yield right-of-way**

The pedestrian's right-of-way is limited by provision of G.S. 20-174(a) which requires every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection to yield the right-of-way to vehicles upon the roadway.

**3. Statutes § 5— construction — literal interpretation — purpose**

Where a literal interpretation of the language of a statute would lead to absurd results and contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded.

**4. Automobiles § 40— crosswalk right-of-way — leaving crosswalk to go around barricade**

Where gutter repair work and barricades prevented exit from the street within the crosswalk lines, plaintiff pedestrian did not forfeit the right-of-way at the intersection by stepping a few feet outside the painted crosswalk lines to skirt a barricade.

**5. Automobiles §§ 19, 40— intersection controlled by traffic signals — right-of-way — pedestrian — motorist**

Provisions of G.S. 20-155(c) requiring motorists to yield the right-of-way to pedestrians within a marked or unmarked crosswalk "except at intersections where the movement of traffic is being regulated by traffic

officers or traffic direction devices" do not subordinate the right-of-way of a pedestrian to that of a turning vehicle at an intersection controlled by traffic signals which are favorable to both.

**6. Automobiles §§ 19, 40— intersection controlled by traffic signals — right-of-way — pedestrian — motorist**

The crosswalk right-of-way is not impaired by G.S. 20-155(c) when the movement of the pedestrian is in accord with the traffic lights.

**7. Automobiles § 40— pedestrians — right to proceed — favorable traffic light**

Principle that the right to proceed is superior to the right to turn applies to a pedestrian crossing an intersection with a favorable light.

**8. Automobiles § 19— intersection — right-of-way — traffic lights**

While the green signal of a traffic light merely gives permission to make a turn, it is an invitation to proceed ahead, and although a motorist facing the green light has permission to make a turn and proceed under what is actually a red light, a party crossing his path following a green light has the superior right.

**9. Statutes § 5— construction — prevention of injustice**

The courts will not adopt a statutory construction that results in palpable injustice when the language of the statute is susceptible to another reasonable construction which is just and consonant with the purpose and intent of the act.

**10. Automobiles § 40— pedestrians — duty of motorist to sound horn**

A pedestrian following the traffic lights and continuing his straight course has the right to rely on the presumption that motorists will obey provisions of G.S. 20-154(a) which require a driver, before starting, stopping or turning from a direct line, first to ascertain that such movement can be made in safety, and to give a clearly audible signal by horn if any pedestrian may be affected by such movement.

**11. Automobiles § 40— pedestrians — right-of-way — traffic lights**

Effect of G.S. 20-173(a) is to give a pedestrian the right-of-way at an intersection controlled by traffic signals only when he is moving with the green light.

**12. Automobiles § 40— pedestrians — right-of-way — assumption**

In the absence of anything which gives or should give notice to the contrary, a pedestrian who has the right-of-way is entitled to assume and to act upon the assumption, even to the last moment, that an approaching motorist will yield the right-of-way.

**13. Automobiles § 40— pedestrian — right-of-way — duty to use due care**

A right-of-way is not absolute and even a pedestrian with the right-of-way must exercise ordinary care for his own safety.

**14. Automobiles § 40— pedestrians — crossing street without right-of-way — evidence of negligence**

Crossing a street without a right-of-way is not negligence *per se*, but is evidence of negligence to be considered with other evidence in the case.

**15. Negligence § 13— contributory negligence — affirmative defense**

Contributory negligence is an affirmative defense which must be pleaded and established by proof.

**16. Negligence § 35— nonsuit for contributory negligence**

Nonsuit on the ground of contributory negligence is proper only if plaintiff's evidence, considered in the light most favorable to her, so clearly establishes her own negligence as one of the proximate causes of her injury that no other reasonable inference may be drawn therefrom.

**17. Automobiles § 83— intersection controlled by traffic signals — right-of-way — contributory negligence of pedestrian**

In this action for injuries sustained when plaintiff pedestrian was struck by defendants' automobile at an intersection controlled by traffic signals, the trial court erred in finding that plaintiff was contributorily negligent as a matter of law, where plaintiff's evidence tended to show that she started across the intersection in a marked crosswalk with the traffic signals in her favor, that plaintiff looked to the left and to the right before she crossed and while in the middle of the street, that barricades in front of gutter repair work prevented plaintiff's exit from the street within the crosswalk lines and blocked defendants' right-turn lane, that plaintiff turned to her left to go around the barricades, and that she was struck by defendants' automobile, which went around the barricades and made a right turn in the intersection, while she was either inside the marked crosswalk or two steps outside of it.

APPEAL by plaintiff from *Clark, J.,* at the May 1969 Civil Session of ALAMANCE Superior Court.

This is a civil action brought by a pedestrian against a motorist and the owner of the car she was driving. Plaintiff Mrs. Wagoner was struck by the Butcher car at the intersection of Webb Avenue and Anthony Street in Burlington on the morning of 26 June 1967. The case is before this Court as an appeal from a judgment of involuntary nonsuit, so the evidence presented is that most favorable to the plaintiff, summarized as follows:

Plaintiff walked several blocks from her home to a bakery on Webb Avenue. Webb Avenue runs in an east-west direction and Anthony Street runs in a north-south direction so that they intersect at right angles. The intersection is controlled by a single overhead stop-go traffic control light. Plaintiff approached the intersection walking in a westerly direction on the sidewalk on the south side of Webb Avenue. Anthony Street to the south of Webb is 43 feet wide with two northbound traffic lanes and one southbound

lane. The gutter and curb were being replaced on the southwest corner of the intersection. Barricades which extended around the corner blocked the right-hand turn lane of Webb so that traffic in that lane which stopped for a red light did so at least 25 feet west of the corner. Traffic had to merge left into the eastbound middle lane to turn. The barricades extended around the corner onto Anthony Street and in doing so blocked the western end of the crosswalk. The Butcher car, approaching the intersection from the west on Webb Avenue, was in the right-hand turn lane. It stopped for a red light at a point somewhat west of the barricades. The witness Miles came to a stop behind the Butcher car. There were cars stopped in the center lane. The light changed to green for traffic on Webb Avenue and those cars proceeded in an eastwardly direction before the Butcher car pulled out from behind the barricade into that middle lane. Plaintiff approached the intersection on Webb Avenue's sidewalk, saw the light change, and looked both ways. Two cars stopped on Anthony to her left, one in the turn lane and one beside it in the northbound lane. No traffic approached from her right. No traffic turned from Webb sharply around the corner in front of her; the Butcher vehicle was still behind the barricade west of the intersection. She proceeded to cross Anthony Street from east to west walking in the crosswalk. She reached a point approximately in the middle of the third lane and turned somewhat in a southwesterly direction to pass around to her left of the barricade. She was then either inside the painted crosswalk or two steps south of it. At this point she was struck by the Butcher car. The witness Miles, who followed the Butcher car from behind the barricade into the middle lane of Webb Avenue, saw the Butcher car headed toward the path of the pedestrian. "* * * [I]t was a Chrysler built car and I could see all the way through the automobile and at the angle we both were in I got a pretty fair view of what was going on." He testified that "* * * after I proceeded to merge out in the center lane of Webb Avenue I noticed she made a right turn on to Anthony Street and saw Mrs. Wagoner walking and it looked like neither of them were going to stop * * *."

After the plaintiff's evidence was presented, defendants' motion for nonsuit was granted and the judgment as of nonsuit was entered. Plaintiff appealed.

*Ross, Wood & Dodge by Harold T. Dodge for plaintiff appellant.*

*Sanders & Holt by Emerson T. Sanders and James C. Spencer, Jr., for defendant appellees.*

BRITT, J.

The question posed by this appeal is whether a judgment of nonsuit was proper on the facts shown. Our answer is no.

The defendants properly concede that certain allegations of defendant Mrs. Butcher's negligence are supported by evidence sufficient to go to the jury on the issue of defendants' negligence and submit that the issue before us is narrowed to whether the plaintiff's own acts clearly establish contributory negligence as a matter of law. The facts of this case also raise the question, "Does a pedestrian crossing a roadway with a favorable light have a right-of-way over a turning motorist subject to the same favorable light?" Our answer is yes.

[1, 2]     To a pedestrian the right-of-way means that he has the right to continue in his direction of travel without anticipating negligence on the part of motorists. Unless the circumstances are sufficient to give him notice to the contrary, he may act upon the assumption, even to the last moment, that motorists will recognize such a preferential right. *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47. The pedestrian's right-of-way is limited in North Carolina by G.S. 20-174(a) which provides that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

[3, 4]     Although some evidence here raises the possibility of an extremely literal argument that plaintiff is precluded from claiming a crosswalk right-of-way by her being two steps outside it, the defendants make no such contention and, in fact, there is evidence that she was within it. The statute itself extends right-of-way to a pedestrian within "an unmarked crosswalk at an intersection." The focus is not on the lines but on the proximity to an intersection which is a place a motorist should expect pedestrians will have to cross and should yield to them. In *Anderson v. Carter*, 272 N.C. 426, 158 S.E. 2d 607, the court construed the term "unmarked crosswalk at an intersection" to mean "* * * that area within an intersection which also lies within the lateral boundaries of a sidewalk projected across the intersection." In *Bowen v. Garner, supra,* the right-of-way was established by the projections of an unpaved grass strip which one of the witnesses described as "what you would call a sidewalk." In *Blake v. Mallard*, 262 N.C. 62, 136 S.E. 2d 214, where the pedestrian crossed a highway between two "T" intersections fifty feet apart, the court observed that "[o]bviously, plaintiff was crossing the highway diagonally in a southwesterly direction and not at a

crosswalk as she alleged," and indicated a liberal interpretation is in order: "Had she crossed *in the vicinity* of the Nightingale where the unnamed dirt street joined the highway she would have had the right of way over a motorist approaching that intersection * * *." (Emphasis added) This Court is guided by the rule of construction that "[w]here a literal interpretation of the language of a statute would lead to absurd results and contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded." 7 Strong, N.C. Index 2d, Statutes, § 5, p. 70; *Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1. Where the gutter repair work and barricades prevented exit from the street within the crosswalk lines, it would be unreasonable and unjust for this Court to say plaintiff forfeited her intersection crossing right-of-way by stepping a few feet outside the painted lines to skirt a barricade.

[5]    Although both the defendant motorist and the plaintiff pedestrian in the case at bar were proceeding pursuant to a green light, the defendants contend that the mere presence of the traffic light removed from the plaintiff the crosswalk right-of-way available to her in its absence. *Miller v. Henry*, 270 N.C. 97, 153 S.E. 2d 798, suggests in general terms that "* * * a pedestrian has the same rights, or responsibilities as the case may be, as a driver." The *Miller* case, however, turned on the simple jury question, "Who had the green light?" and the whole nature of its discussion reflects the fact that only one of the parties did have the green light. The decision restates the basic principle that although one party may be a motorist and the other a pedestrian "* * * whoever had the green light had the superior right to traverse the intersection and to assume that the other would recognize it and conduct himself accordingly." The basic for this principle is statutory. G.S. 20-172 provides:

"Pedestrians shall be subject to traffic control signals at intersections as heretofore declared in this article, but at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in part eleven of this article."

Those section eleven privileges include the crosswalk right-of-way and are clearly not to apply where a right conferred there would conflict with a traffic signal. *Miller v. Henry, supra*, pointed out that "[a] pedestrian at a crosswalk acquires no additional rights against a red traffic light * * *."

The defendants urge this Court to go much further than simply recognizing that the pedestrian's rights at intersections are limited

by conflicting traffic control signals. The defendants contend that there is a manifest legislative intent to set up two separate and sharply opposing lines of authority to be applied according to the mere presence or absence of a traffic light, and without any regard to whether the light in fact confers superior rights on either of the parties. In several instances, the statutory language is indeed susceptible to such an interpretation. G.S. 20-155(c) provides:

> "The driver of any vehicle upon a highway within a business or residence district shall yield the right-of-way to a pedestrian crossing such highway within any clearly marked cross-walk, or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices."

We do not think the effect of the statute's exception is to subordinate the right-of-way of a pedestrian moving on a green light to that of a turning motorist.

In the case of *Lott v. DeLuxe Cab*, 136 Or. 349, 299 P. 303 (1931), the Oregon court was faced with an identical clause ("except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices." Chapter 217, § 2, Subdivision 7(b) of General Laws of Oregon for 1927) and said: "We think it was not the intention of the legislature to change the rule of right of way between vehicles and pedestrians, but rather to subject the latter to the regulation of traffic signal devices at street intersections."

[6]  In *Sanders v. Newsome*, 179 Va. 582, 19 S.E. 2d 883 (1942), the Virginia Supreme Court of Appeals construed Michie's 1936 Code, § 2154, subsection (123)(c), which is identical to G.S. 20-155(c) in its entirety. The court examined the related statutory provisions and particularly one similar to G.S. 20-154(a). That was subsection (122)(a) which provided: "Every driver who intends to * * * turn, or partly turn from a direct line, shall first see that such movement can be made in safety * * *." The court concluded:

> "When these statutes are read and construed together, as they must be, the reason for excepting the provisions of subsection (123)(c) at intersections where the movement of traffic is controlled by traffic officers or signal direction devices is manifest. To give a pedestrian, crossing an intersection *on a red light,* the right of way would create much confusion, hinder the or-

derly movement of traffic and unreasonably impair the safety of travelers upon the highway." (Emphasis added)

The construction argued by the defendants, on the other hand, "would turn a traffic safety signal device into an invitation to a place of danger." *Sanders v. Newsome, supra.* G.S. 20-155(c) may thus be construed to mean that the crosswalk right-of-way is not impaired when the movement of a pedestrian is in accord with the traffic lights.

**[7]** The pedestrian crossing with a favorable light is also assisted by the principle that the right to proceed is superior to the right to turn. The 1967 amendment to G.S. 20-155(b) added to the weight of this principle by providing:

> "* * * Notwithstanding the provisions of this section and § 20-154, a vehicle making a left turn in front of an approaching vehicle does not have the right-of-way unless such movement can be completed with safety prior to the arrival of the approaching vehicle, and when the movement cannot be completed with safety, the driver of the vehicle making the left turn shall yield the right-of-way."

Although several of the provisions of G.S. 20-155, which determine the right-of-way in the absence of traffic lights are inapplicable where there are lights, *White v. Phelps,* 260 N.C. 445, 132 S.E. 2d 902, the amendment would appear applicable to a driver turning into the path of approaching traffic whether he has a green light or no light at all. The spirit of this amendment would apply equally well to an approaching *pedestrian* and a vehicle turning to the right.

**[8]** The distinction has been made that while the green signal of a stop-go light merely gives *permission* to make a turn, it is an *invitation* to proceed straight ahead. *Sanders v. Newsome, supra.* That theory is based on the observation that once the turn has been made the turning vehicle is actually traveling "in a direction against which the signal is closed." *Sanders v. Newsome, supra.* While the motorist has permission to make the turn and proceed under what is actually a red light, a party crossing his path following a green light has a superior right.

**[9]** Guided by the principle that "[t]he intent and spirit of an act are controlling in its construction," 7 Strong, N.C. Index 2d, Statutes, § 5, p. 69, and cases cited, this Court does not adopt the view urged by the defendants that the legislature intended that the provisions subjecting pedestrians to traffic lights would impair their rights as pedestrians proceeding in accord with such lights. This

Court follows the rule that "[t]he courts will not adopt a construction that results in palpable injustice when the language of the statute is susceptible to another reasonable construction which is just and is consonant with the purpose and intent of that act." 7 Strong, N.C. Index 2d, Statutes, § 5, p. 70, and cases cited. The injustice of holding that the legislature intended in all events to impair the pedestrian's right-of-way where the intersection may be in some ways a controlled one is clear. If he had no right-of-way, the pedestrian faced with heavy turning traffic would not even be able to cross the street even though he had the green light. He would be "invited into a place of danger" every time he obeyed the green light only to find himself dodging or being hit by turning traffic. His position is bad enough with a right-of-way for he is "bound to center at least a part of his attention upon the condition of the pavement and upon the traffic signal itself, in order to be aware of any changes therein." *Goodman v. Brown*, 164 Misc. 145, 298 N.Y.S. 574.

[10]    In G.S. 20-154(a) there is no hint of a legislative intent to create a clear dichotomy between those intersections with and those without traffic lights. It provides across the board that "[t]he driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn * * *." A pedestrian following the lights and continuing his straight course has the right to rely on the presumption that the driver will obey the law as set forth in this statute. *Gearhart v. Des Moines R. Co.*, 237 Iowa 213, 21 N.W. 2d 569 (1946).

[11]    This Court does not adopt the defendants' contention that G.S. 20-173(a) must be construed as indicating a legislative intent to establish two mutually exclusive sets of rules to be applied according to the mere presence or absence of a traffic light. That statute, in language superficially susceptible to such a construction, provides:

> "Where traffic control signals are not in place or in operation the driver of a vehicle shall yield the right-of-way, slowing or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection * * *."

The construction argued by defendants would have the effect of depriving a pedestrian of all right-of-way privileges at an intersection at which there is a traffic control signal. We do not think the General Assembly so intended. The more reasonable construction, which

we adopt, is that the right-of-way given a pedestrian by G.S. 20-155(c) at an intersection where there is no traffic control signal is limited at an intersection where there is a traffic control signal by G.S. 20-173(a) to the pedestrian having the right-of-way only when he is moving with the green light. In the instant case, when vehicular traffic on Webb Avenue had the green light and the right to proceed on Webb Avenue across Anthony Street, pedestrian traffic on Webb Avenue had the right to proceed across Anthony Street and that right was superior to that of a motorist turning from Webb Avenue onto Anthony Street.

[12, 13]    Where the pedestrian has the right-of-way, he is "not required to anticipate negligence on the part of others." *Bowen v. Gardner, supra.* Plaintiff was entitled to assume and to act upon the assumption, even to the last moment, that an approaching motorist would yield the right-of-way "[i]n the absence of anything which gave or should have given notice to the contrary." *Bowen v. Gardner, supra.* The Supreme Court in *Bowen* held that where the pedestrian had the right-of-way afforded her by an intersection crosswalk it was erroneous to find contributory negligence as a matter of law simply because she failed to see the defendant motorist approaching the intersection. However, a right-of-way is not absolute and even a pedestrian with the right-of-way must exercise ordinary care for her own safety. *Bowen v. Garner, supra.* Whether plaintiff, simply by failing to see the vehicle, failed to exercise due care is a jury question. The jury must determine whether the vehicle's speed, proximity, or manner of operation would have put the plaintiff, had she seen it, on notice that the motorist did not intend to yield the right-of-way. *Bowen v. Gardner, supra.*    ·

[14-16]    A judgment of nonsuit on the premise that plaintiff was contributorily negligent as a matter of law would be erroneous even if she did not have the right-of-way. Crossing a street without a right-of-way is not negligence *per se.* In *Bank v. Phillips,* 236 N.C. 470, 73 S.E. 2d 323, the court said:

> "If it be conceded that the intestate failed to yield the right of way \* \* \* even so, it was the duty of the defendant, both at common law and under the express provisions of G.S. 20-174(e), to 'exercise due care to avoid colliding with' [any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary]   \* \* \*.

> Nor may the evidence tending to show that intestate failed to yield the right of way as required by G.S. 20-174(a) be treated on this record as amounting to contributory negligence as a

matter of law, particularly so in view of the testimony to the effect that intestate at the time he was struck had reached a point about 10 feet from the west curb of the street. Our decisions hold that a failure so to yield the right of way is not contributory negligence *per se,* but rather that it is evidence of negligence to be considered with other evidence in the case in determining whether the actor is chargeable with negligence which proximately caused or contributed to his injury. [Cases cited]"

As the court said in *Warren v. Lewis,* 273 N.C. 457, 160 S.E. 2d 305, "[c]ontributory negligence is an affirmative defence which must be pleaded and established by proof." In *Bowen v. Gardner, supra,* the court restated the rule that "[n]onsuit on that ground is proper only if plaintiff's evidence, considered in the light most favorable to her, so clearly establishes her own negligence as one of the proximate causes of her injury that no other reasonable inference may be drawn therefrom."

In *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589, the court held the plaintiff contributorily negligent as a matter of law because he did not see the defendant's vehicle although the highway was almost level and visible for a distance of 700 to 1000 feet.

In *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246, the highway was visible for a distance of 300 yards to a quarter of a mile in the direction from which the defendant's vehicle approached. Plaintiff was held contributorily negligent where under those circumstances he walked into the side of a fast-moving truck.

In *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499, the plaintiff was held to be contributorily negligent where she had clear visibility for 500 to 600 feet and failed to heed the timely sound of defendant's horn because she attempted the crossing without wearing her hearing aid.

In *Blake v. Mallard, supra,* a "colored woman wearing dark clothing" crossing a highway diagonally at night was contributorily negligent where "defendant was two hundred yards away, approaching at a speed of sixty miles per hour when she started 'walking normally' into his path." His lights had been visible for a mile. Instead of stopping in the other lane, she entered his lane and attempted to run across that lane after seeing the defendant only forty-five feet away.

A rule which by definition requires contributory negligence to be so clear "that no other reasonable inference may be drawn there-

from" will by its nature be satisfied only infrequently and only in extreme circumstances. In each of those cases holding contributory negligence as a matter of law, the dominant characteristic was the exceptionally high visibility of the open road. In a more congested and confused setting like the busy intersection under repair in the case at bar, the conclusion that the plaintiff was negligent as a matter of law in crossing with a favorable light is far less compelling. As Justice Higgins observed in *Warren v. Lewis, supra,* "[o]rdinarily, the issue is one of fact to be decided by the jury."

The issue of contributory negligence was submitted to the jury in *Templeton v. Kelley,* 215 N.C. 577, 2 S.E. 2d 696, where the plaintiff in a business district was crossing without a right-of-way and stopped for a car approaching at 15 miles per hour, only to be struck by a second car that "whipped around to the left of the car in front, and hit me."

The issue was submitted to the jury in *Bank v. Phillips, supra,* where a pedestrian without a right-of-way was struck by a car which had left its normal lane and crossed the intermittent center line to pass another car. The pedestrian was, like Mrs. Wagoner, only 10 feet from the curb he was to reach.

The issue was submitted to the jury in *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762, where a pedestrian without a right-of-way was struck near the shoulder of the road.

It was submitted to the jury in *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462, where a pedestrian without a right-of-way saw an approaching truck and safely crossed in front of it to reach her mailbox. She watched it pass and stepped back across, oblivious to a second truck following close behind which struck her. The court cited G.S. 20-174(e) for the rule that "* * * every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary * * *" and G.S. 20-141(c), providing that the driver is under a duty to decrease speed "when special hazard exists with respect to pedestrians" or "as may be necessary to avoid colliding with any person." The court concluded that "[a] motorist operates his vehicle on the public highways where others are apt to be. His rights are relative."

[17] The issue of contributory negligence was one for the jury in the case at bar. As plaintiff approached the Anthony Street intersection, she looked up to see the traffic light. She saw the light facing south on Anthony Street change to red thereby making the light on

Webb Avenue green. She saw two cars stop for the red light in the two northbound lanes of Anthony Street. They were immediately to her left and stopped abreast about three feet away from the crosswalk. She looked to the left and saw these two stopped cars. She looked to the right and saw no approaching southbound traffic on Anthony Street because that traffic stopped for the light. She saw no one turning from the right lane of Webb around the corner onto Anthony, because the Butcher car had stopped for the previous red light at least twenty-five feet back from the corner. Defendant Mrs. Butcher waited there until the eastbound lane to her left cleared and followed that traffic lane into the intersection. In plaintiff's words, "[w]hen I got up to the intersection of Anthony and Webb Avenue, there was a stop light and I looked up to see if the light was red so I could cross and I looked up and it was on red * * * I looked both ways * * * I seen two cars to my left that were stopped there at the red light. I saw them. I didn't see any car coming from my right at all. * * * I went across the street and got in the third lane and I happened to look to see if any cars were moving and I started on across * * *." She crossed the middle of the third lane and started shifting her course to her left to get around some barricades. As she turned to face a southwesterly direction, she was struck by the Butcher car which had completed its turn near the middle of the intersection and proceeded in a southerly direction straight toward plaintiff without its driver ever seeing her.

Plaintiff proceeded with a favorable light; she used the crosswalk so long as it was possible to do so; she looked to the left and to the right both before she crossed and at "midstream," and she was struck as she attempted to negotiate an obstacle course of barricades. Such circumstances do not so clearly require the conclusion that plaintiff failed to exercise ordinary care for her safety that no other inference is possible.

For the reasons stated, the judgment of the superior court is

Reversed.

MALLARD, C.J., and VAUGHN, J., concur.