STATE OF NORTH CAROLINA v. DAVID NORMAN PARKS

No. 785SC1131

(Filed 5 June 1979)

Criminal Law § 73.2; Homicide § 15— statements by homicide victim—inadmissible hearsay

The trial court in a homicide prosecution erred in admitting into evidence extrajudicial statements of the victim concerning her intent to tell defendant that she wanted a separation and to leave the marital home since such statements were inadmissible hearsay.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 10 August 1978, in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 26 March 1979.

---

State v. Parks

---

Defendant was charged with the murder of his wife, Deborah Block Parks on 4 September 1977. At trial the State sought a verdict of second-degree murder. Defendant was convicted of voluntary manslaughter and appeals from the judgment imposing a prison term of not less than twelve nor more than sixteen years.

*Attorney General Edmisten by Assistant Attorney General James E. Magner, Jr. for the State.*

*William K. Rhodes, Jr. for defendant appellant.*

CLARK, Judge.

The victim, Deborah Parks, was killed about 1:30 p.m. on Sunday, 4 September 1977, in her mobile home where she lived with her husband, the defendant. Only the two of them were present when the fatal shot was fired. The State contends that defendant intentionally shot his wife. Defendant contends that the fatal shot was fired accidentally by him while cleaning his rifle. The State's theory is that on this Sunday afternoon about 1:15 p.m. she took five boxes to the mobile home; that she told defendant she wanted to separate from him and that she was going to pack his clothes in the boxes; that defendant became emotionally upset and intentionally shot her with his rifle.

The State attempted to prove this theory of the case by evidence which included the testimony of State's witnesses that the victim had made statements to them as follows:

1. Bette Block, mother of the victim Debbie Parks, testified that on the Sunday in question she was working at the Blockade Runner. Debbie came to see her about 11:30 a.m. and had lunch with her. Debbie was "frightened to death." *Debbie told her that she was going home and tell her husband she wanted him to leave, and that she was going to pack his clothes in the boxes.* Debbie left shortly after 1:00 p.m.

2. Dr. Neill Musselwhite, the victim's employer, testified that on several occasions he had talked with the victim about her relationship with her husband. On Thursday, two weeks before her death, *she told him that she felt very locked into her situation with her husband for financial reasons, and that she wanted to go back to school.* On the Monday preceding her death, she came to

work tired and upset, and *she told him that she had told her husband she did not love him and wanted a separation, that as a result her husband had locked himself in the bathroom and attempted suicide.* On the Friday preceding her death, *she told him that she had made an appointment with an attorney.*

3. Diane Alexander, who worked with the victim in Dr. Musselwhite's office, testified that she talked with Debbie on the Friday before her death, and *Debbie told her that she had an appointment to see her lawyer on the following Wednesday about a separation from her husband, that Debbie talked with her about the relationship with her husband,* and that as a result of this conversation the witness advised Debbie to spend the weekend with her.

The defendant assigns error in the admission, over his objection, of these statements by the victim to the State's witnesses, contending that the statements were incompetent hearsay.

The testimony of the State's witnesses as to these extrajudicial statements by the victim depend upon the competency and credibility of the victim and are therefore hearsay. 1 Stansbury's N.C. Evidence § 138 (Brandis rev. 1973). The statements are inadmissible unless they fall within the recognized exception to the hearsay rule. It appears that admissibility depends upon whether the statements of the victim are declarations of intention within the exception recognized in *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971), which also involved a homicide prosecution. In *Vestal* the victim's dead body was found floating in Lake Gaston on 21 June 1969. The victim's wife testified that her husband told her on the evening of 15 June 1969 while "preparing" to leave home that he was going with the defendant on a business trip to Wilmington, Delaware. The State's theory was that he was killed in Greensboro shortly after he left home. The majority held the evidence admissible to show that the victim intended to go on a trip with the defendant, that he left home with such intent, and that he "reached and entered into the company of" the defendant. For the court, Justice Lake stated: "The two fold basis for exceptions to the rule excluding hearsay evidence is necessity and a reasonable probability of truthfulness." 278 N.C. at 582, 180 S.E. 2d at 769. And it was pointed out that the subsequent death of the victim established

necessity (the unavailability of the declarant as a witness), and the circumstances under which the statements were made supplied the reasonable probability of trustworthiness because it is a matter of everyday experience that a man leaving his home for an out-of-town trip will inform his wife as to his destination, traveling companion, purpose and anticipated time of return.

In the case *sub judice*, the extrajudicial statements of the victim that she intended to go home where she would find her husband may be admissible under the "declaration of intention" exception to the hearsay rule. But the primary purpose of the various statements was not to prove that the victim went home where she found her husband because this was established by the State's evidence, including defendant's admission that he shot her while in the. mobile home. Her declarations of intent to tell defendant she wanted a separation and to leave the home did not have "the reasonable probability of truthfulness", as did the victim's declaration of intent to meet and take a trip with defendant in *Vestal.* In general the other statements of the victim were offered to prove the truth of the matters asserted, *i.e.*, marital discord and defendant's attempted suicide, and do not come within any recognized exception to the hearsay rule.

The victim's hearsay statements were crucial on the question of whether the homicide was intentional, as contended by the State, or accidental, as contended by the defendant. Clearly, the admission of the victim's hearsay statements was prejudicial error, which requires a new trial.

We find no merit in defendant's contention that the trial court erred in admitting the opinion testimony relative to the force required to pull the trigger and fire the rifle. The witness Carpenter was an expert and his opinion was based on facts within his own personal knowledge as a result of a series of tests performed on the rifle. *See State v. Grady,* 38 N.C. App. 152, 247 S.E. 2d 624, *appeal dismissed,* 296 N.C. 107, 249 S.E. 2d 806 (1978).

Nor do we find merit in defendant's contention that the trial court erred in submitting to the jury the lesser offense of voluntary manslaughter. There was sufficient evidence of heat of passion to support the submission of voluntary manslaughter. However, it is noted that much of the evidence from which heat of passion could be reasonably inferred was contained in the hear-

say statements of the victim, which we have found were in admissible. On retrial the trial judge must determine whether the evidence then submitted justifies the submission to the jury of the voluntary manslaughter offense. *See State v. Putnam,* 24 N.C. App. 570, 211 S.E. 2d 493 (1975).

For prejudicial error in the admission of hearsay evidence we order a

New trial.

Chief Judge MORRIS and Judge ARNOLD concur.