HELEN RUTH HOGSED, ADMINISTRATRIX OF THE ESTATE OF BENJAMIN SCOTT HOGSED, DECEASED v. DAVID EUGENE RAY, SR. AND DAVID EUGENE RAY, JR., BY HIS GUARDIAN AD LITEM, MERINDA S. WOODY

No. 8730SC292

(Filed 16 February 1988)

1. **Automobiles § 50.1— wrongful death—teenager falling out of truck bed—failure to keep proper lookout and maintain control of vehicle**

    The trial court did not err in denying defendants' motion for judgment n.o.v. in a wrongful death action where the evidence tended to show that defendant teenager was operating a four-wheel drive vehicle and transporting a group of his friends back to his cabin; two rode in the cab with him while the remaining five assumed various positions in the truck bed; decedent sat on the edge of the truck bed behind the driver with his feet on the floor of the bed; he held onto the roll bar with one arm and onto the truck body with his other hand; as the truck turned into a curve on the gravel road, defendant leaned over to adjust the radio; the truck began to swerve and did so three times; as the truck began to straighten, deceased tumbled onto the edge of the road; such evidence would support a conclusion that when defendant reached up to adjust the radio, his attention was diverted; and such a conclusion if reached would be probative on the issues of whether defendant failed in his duty to keep a proper lookout and to maintain control over his vehicle.

**2. Witnesses § 8.1— cross-examination not improperly limited**

There was no merit to defendants' claim in a wrongful death action that the trial court erred in refusing to allow them to cross-examine a witness as to a response elicited in a prior recorded statement, since defendants questioned the witness several times regarding the response in question.

**3. Evidence § 50.4— post-concussion syndrome—expert testimony properly excluded**

The trial court in a wrongful death action did not err in preventing a physician from testifying as to the symptoms of post-concussion syndrome, since there was no evidence at trial that deceased experienced post-concussion syndrome at the time of his death or had suffered from a concussion at all.

APPEAL by defendants from *Allen, C. Walter, Judge.* Judgment entered 24 October 1986 in Superior Court, CLAY County. Heard in the Court of Appeals 19 October 1987.

Helen Ruth Hogsed, administratrix of the estate of Scott Benjamin Hogsed, having been so appointed on 20 November 1984, instituted this civil action on 4 April 1985 alleging negligence which resulted in the wrongful death of decedent.

Scott Benjamin Hogsed died on 28 August 1984, as a result of severe head injuries sustained on 21 August 1984 when he fell from the back of a 1971 Ford pickup in which he was a passenger.

The plaintiff submitted evidence at trial which tended to show that the decedent, who was 15 years old at the time of the accident, travelled to a cabin located on Fires Creek Road outside of Hayesville with five friends on 20 August 1984 for an overnight stay. David Eugene Ray, Jr., transported four members of the group in his father's pickup truck to the cabin which his family owns. While en route they met four other friends who decided to join them there. The members of the second group left for the night and three of them returned early the next day. When they arrived at around 10:00 a.m., everyone went "four-wheeling," which is riding in a four-wheel drive truck up into the mountains. They returned to the cabin and then decided to go for a swim. After swimming for approximately thirty minutes, the group started back down Fires Creek Road to the cabin.

David Eugene Ray, Jr. drove for the group and was accompanied in the truck's cab by Jennifer Martin and Tim Gray. The remaining five teenagers rode on the back of the truck and either sat on the edge of the bed or stood. Scott Hogsed, decedent, was

positioned on the left-hand side of the truck bed and was sitting on the edge with his feet on the floor. He had his right hand on the side of the truck and his left hand around the roll bar, which is a steel apparatus protruding from the cargo bed, and wrapping around the cab of the truck at the same approximate height. Elwin Pittman, Jr., who was riding in the truck bed at the time of the accident, testified that David Eugene Ray, Jr. was travelling "[t]wenty-five to thirty miles an hour maybe less, maybe a little more," while the driver stated in his deposition that he never exceeded ten to fifteen miles per hour.

As they came around a curve, the driver leaned over to adjust the radio. The vehicle then swerved two to three times and slid a little, as the road was covered in gravel. Sam Hogsed then looked back and saw the decedent rolling on the ground. David Eugene Ray, Jr. heard Sam Hogsed yell, "Stop, David. Scott fell out." He then stopped the truck immediately and ran to assist decedent.

The defendants submitted no evidence at trial and moved for a directed verdict at the conclusion of plaintiff's evidence on the grounds that the evidence was insufficient to show negligence on the part of defendant. The jury returned a verdict in favor of the plaintiff in the amount of $35,000.00. Defendants then made a motion for judgment notwithstanding the verdict and for a new trial. Both motions were denied. Defendants appeal.

*Philo, Spivey & Cabe, P.A., by James Y. Cabe and David C. Spivey, for plaintiff appellee.*

*Roberts Stevens & Cogburn, P.A., by Steven D. Cogburn and Glenn S. Gentry, for defendants appellants.*

JOHNSON, Judge.

[1] Defendants first call upon us to decide whether the trial court erred in denying their motion for judgment notwithstanding the verdict on the grounds that plaintiff's evidence was insufficient to establish actionable negligence as a matter of law. It is a quite familiar rule of civil procedure that:

> [A] [motion] [for] [j]udgment notwithstanding the verdict should be granted only when the evidence is insufficient as a matter of law to support the verdict. Where the evidence ad-

mitted at trial, taken in the light most favorable to the non-moving party with all reasonable inferences drawn in his favor, is sufficient to support the verdict, it should not be set aside.

*Beal v. K. H. Stephenson Supply Co.,* 36 N.C. App. 505, 507, 244 S.E. 2d 463, 465 (1978).

In this cause of action alleging negligence, it was therefore incumbent upon the plaintiff to submit evidence from which a jury could determine that defendant breached his duty to exercise ordinary care in the operation of his vehicle. *See Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47 (1969).

The evidence which the jury was presented was to the effect that defendant was operating a four-wheel drive vehicle and transporting a group of his friends back to his cabin. Two of them rode with him in the cab while the remaining five assumed various positions in the truck bed. Scott Hogsed, decedent, was seated on the edge of the truck bed on the driver's side turned inwardly with his feet on the floor. He held onto the roll bar with one arm and onto the truck body with his other hand. As the truck rode into a curve on the gravel road, defendant leaned over to adjust the radio. The truck then began to swerve. It swerved a total of three times, first to the right at about a 35 degree angle, then to the left, and then to the right again. As the truck began to straighten, Sam Hogsed saw decedent tumble onto the edge of the road.

Defendants argue that plaintiff's evidence was devoid of any facts from which a jury could possibly conclude that defendant negligently operated the vehicle in question. We cannot agree. As we are required to view the evidence in the light most favorable to the non-moving party, *Beal* at 507, 244 S.E. 2d at 465, we must consider the possibility that when defendant reached up to adjust the radio, his attention was diverted. The evidence could support such a conclusion, and such a conclusion if reached would be probative on the issues of whether defendant failed in his duty to keep a proper lookout and to maintain control over his vehicle.

As a general rule "it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and

vehicles upon the highway. This duty also requires that the operator must be reasonably vigilant . . ." *Bowen* at 367, 168 S.E. 2d at 51 (1969), *quoting Adams v. Service Co.*, 237 N.C. 136, 141, 74 S.E. 2d 332, 336 (1953).

Although we agree with defendant that mere causation does not establish negligence and that "skidding itself does not [without more] imply negligence," we conclude that these rules and the many cases cited in support thereof are distinguishable from our facts. The facts adduced at trial clearly were sufficient to support the finding which the jury ultimately made.

[2] Next, defendants assign as error the trial court's refusal to allow a witness to be cross-examined as to a response elicited in a prior recorded statement. Defendants contend that the trial court incorrectly sustained an objection made when defendants' counsel attempted to cross-examine witness Sam Hogsed as to whether in a prior recorded statement, he had agreed that "the swerve that [he] mentioned was not anything that was careless or reckless or anything out of the normal." The trial court sustained the objection and stated no reason for the ruling. We find no error.

The transcript testimony reveals that the trial court sustained an objection made by counsel for the plaintiff regarding a prior recorded statement Sam Hogsed made during a taped conversation at his home on 29 October 1984. On cross-examination of Sam Hogsed, defense counsel questioned him regarding his taped testimony as follows:

Q. Isn't this a transcript of a recorded statement that you gave to Mr. Jones on October 29th, 1984, at the home of Mr. and Mrs. Hogsed in Hayesville? Isn't this it?. . .

Q. And then, didn't he ask you this question:

"So the swerve that you mentioned was not anything that was careless or reckless or anything out of the normal?" Didn't he ask you that question?

A. Yes.

Mr. Spivey: [Counsel for the plaintiff] Objection.

The Court: Objection sustained.

Mr. McClure: Your Honor, I'd like for his answer in the record.

The Court: Put it in. . . .

Defense counsel also questioned him regarding his deposition concerning the same question as follows:

Q. Didn't Mr. Cogburn ask you this question: "So this swerving you're talking about wasn't any sharp swerving back and forth in the road, was it?" Didn't he ask you that question in your deposition?

A. He probably did. I don't—like I said, I was trying to block everything out. . . .

Q. And so didn't Mr. Cogburn ask you this question—can you see that?

A. Where?

Q. Right there (indicating). Didn't he ask you: "So this swerving you're talking about wasn't any sharp swerving back and forth in the road, was it?" And didn't you say: "It wasn't real sharp." Isn't that what you said?

*A. It wasn't real sharp. It was a swerve. It was a fishtail like.*

Defendants rely upon an assertion that the basis for the trial court's ruling was an incorrect interpretation of the since abrogated "jury province rule." This reliance is misguided, as no reason was given by the trial court in sustaining the objection. The reasoning upon which they erroneously rely was addressed to the questioning of another witness, Tim Gray. The court stated that it had sustained an objection to a question asked of Tim Gray on direct examination for the reason that "it had to do with the ultimate fact to be found by the jury and not by [the] witness." This reasoning was not given to support any ruling regarding Sam Hogsed's testimony.

In addition, defendants were not prejudiced by the court's sustaining of the objection, since they questioned the witness several times regarding the same inquiry. In fact, Samuel Hogsed was recalled to testify and defendants' counsel again cross-examined him regarding this question as follows:

Hogsed v. Ray

Q: So the swerving that you mentioned was not anything that was careless or reckless or anything out of the norm?

The Court: That's it.

Mr. McClure: And then I asked him if that question had been asked of him by Mr. Jones, and you sustained the objection.

The Court: That's right.

Mr. McClure: And I'll ask him that.

Q: (By Mr. McClure) Didn't you tell Mr. Jones that, or didn't you say—let me start over. Didn't Mr. Jones ask this question: So the swerve that you mentioned was not anything that was careless or recklessly or anything out of the normal, and didn't you answer "no" to Mr. Jones?

A: Yes, to him.

Q: Sir?

A: To him, I guess I did.

Therefore, it is clear that any claim by defendants that they were unable to cross-examine Sam Hogsed is feckless.

[3] By their third Assignment of Error, defendants contend that the trial court erred in preventing Dr. Elaine Huffman from testifying as to the symptoms of post-concussion syndrome. We cannot agree.

At trial, plaintiff called Dr. Elaine Huffman to testify and defendants' counsel attempted to cross-examine her regarding post-concussion syndrome. Counsel for the plaintiff objected to the questions asked and the objections were sustained.

The cases upon which defendants rely are inapposite to our facts. For example, they cite *State v. Grady*, 38 N.C. App. 152, 247 S.E. 2d 624 (1978), for the principle that a medical expert may testify about the causal relationship between a victim's prior medical condition and a subsequent accident. While this is an accepted rule, it does not permit testimony of a causal relationship founded upon speculation or mere possibility. *Ballenger v. Burris Industries*, 66 N.C. App. 556, 311 S.E. 2d 881 (1984). Since there was no evidence introduced at trial that decedent was experienc-

ing post-concussion syndrome at the time of his death or had suffered from a concussion at all, evidence regarding the condition would be irrelevant and therefore inadmissible. N.C.R. Evid. 402. In short, the trial court properly sustained the objections to the testimony regarding post-concussion syndrome.

It is for the foregoing reasons that we find no error.

No error.

Judges WELLS and COZORT concur.